[Cite as *State v. Pierce*, 2014-Ohio-4833.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

STATE OF OHIO, :
:
    Plaintiff-Appellant, : Case No. 13CA11
:
    vs. :
: DECISION AND JUDGMENT
MATTHEW A. PIERCE, : ENTRY
:
    Defendant-Appellee. : **Released: 10/24/14**
_____

APPEARANCES:

Michael DeWine, Ohio Attorney General, and Nicole Candelora-Norman, Daniel J. Martin, and Kristina E. Tonn, Assistant Attorneys General, Columbus, Ohio, and Colleen S. Williams, Meigs County Prosecutor, Pomeroy, Ohio, for Appellant.

K. Robert Toy, Toy Law Office, Athens, Ohio, for Appellee.[1]
_____

McFarland, J.

{¶1} This is an appeal from a Meigs County Court judgment entry granting Appellee, Matthew Pierce's, Crim.R. 29(A) motion for judgment of acquittal, which was made during trial, at the close of the State's case. On appeal, Appellant, State of Ohio, raises a single assignment of error, contending that the trial court erred as a matter of law by holding that the State of Ohio must demonstrate, as an essential element of proving a

_____
[1] Appellee has not filed a brief or otherwise participated on appeal.

violation of Ohio Administrative Code sections 1501:31-15-11(B)(1) and 1501:31-15-11(F)(14), that a deer is not a "captive white-tailed deer" or a "domestic deer" as those terms are defined in R.C. 1531.01.

{¶2} Because we conclude, after construing the evidence in a light most favorable to Appellant, that no rational trier of fact could have found all of the essential elements of the offense proven beyond a reasonable doubt, Appellant's sole assignment of error is overruled and the decision of the trial court is affirmed.

## FACTS

{¶3} Initially, it should be noted that Appellee has failed to file a brief in this matter. Therefore, we may accept the State's statement of facts and issues as correct and reverse the judgment if the brief reasonably appears to sustain such action. App.R. 18(C). Accordingly, we set forth the statement of the case, as contained in Appellant's brief, omitting citations to the record and transcripts where necessary.

{¶4} During the 2012 hunting season, Matthew A. Pierce shot and killed two antlered white-tailed deer[2] and failed to tag one of them. For this, he was ticketed and charged with two third-degree misdemeanors pursuant to R.C. 1531.02, OAC 1501:31-15-11(B)(1) and OAC 1501:31-15-

---

[2] Whether the State proved, or was required to prove, that the deer were white-tailed deer is the primary question on appeal.

11(F)(14). A trial date was set in the County Court of Meigs County for December 13, 2012. After several continuances, the trial took place on May 7, 2013. During the trial, the defense moved for judgment pursuant to Crim.R. 29, arguing that the State had a burden to prove that the deer in question were wild animals as opposed to captive white-tailed deer, which are not subject to the State's hunting regulations. The court adjourned the hearing and required the parties to submit briefs on this issue before the court reached a decision.

{¶5} The State and Appellee submitted briefs in May 2013, and the trial court entered judgment in favor of Appellee on August 22, 2013. In its Judgment Entry, the court held that the State "must show in its case-in-chief some evidence that would prove beyond a reasonable doubt that this was not a 'captive white tailed deer' or a 'domestic deer.' " Pursuant to R.C. 2945.67(A), a motion for leave to appeal the trial court's holding was filed and was granted on November 25, 2013.

ASSIGNMENT OF ERROR

"I.    THE MEIGS COUNTY COURT ERRED AS A MATTER OF LAW BY HOLDING THAT THE STATE OF OHIO MUST DEMONSTRATE, AS AN ESSENTIAL ELEMENT OF PROVING A VIOLATION OF OHIO ADM. CODE 1501:31-15-11(B)(1) AND OHIO ADM. CODE 1501:31-15-11(F)(14), THAT A DEER IS NOT A 'CAPTIVE WHITE-TAILED DEER' OR A 'DOMESTIC DEER' AS THOSE TERMS ARE DEFINED IN R.C. 1531.01."

## LEGAL ANALYSIS

{**¶6**} In its sole assignment of error, Appellee contends that the trial court erred as a matter of law by holding that the State of Ohio must demonstrate, as an essential element of proving a violation of OAC 1501:31-15-11(B)(1) and 1501:31-15-11(F)(14), that a deer is not a "captive white-tailed deer" or a "domestic deer" as those terms are defined in R.C. 1531.01. A review of the record reflects that this case was dismissed as a result of the trial court granting Appellee's Crim.R. 29(A) motion for judgment of acquittal, which was made at the close of Appellee's case.

{**¶7**} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386 (2006), ¶ 37. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997) (stating that "sufficiency is a test of adequacy"); *State v. Jenks*, 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991). The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution,

any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979); *Jenks* at 273. Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390.

{¶8} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶9} On appeal, the State challenges the trial court's dismissal of the charges against Appellee via the grant of a Crim.R. 29(A) motion for judgment of acquittal. Appellee was charged with two violations of OAC 1501:31-15-11, which provides for "Deer regulations." Specifically, Appellee was charged with taking more than one antlered deer per license year, in violation of former OAC 1501:31-15-11(B)(1), and failure to

permanently tag deer, in violation of former OAC 1501:31-15-11(F)(14),

both third degree misdemeanors per R.C. 1531.99(B), which governs

penalties and restitution for illegally taken or possessed wild animals.[3]

{¶10} Former OAC 1501:31-15-11(B)(1) provided as follows:

"It shall be unlawful to take more than one antlered deer per

license year.  For purposes of this rule an antlered deer shall be

any deer with antlers three inches in height or greater.  An

antlerless deer shall be any deer with no antlers or antlers less

than three inches in height."

Former OAC 1501:31-15-11(F)(14) further provided that:

"It shall be unlawful to fail to game check and permanently tag

a deer, taken during any open deer season, by noon of the day

following the date the deer was killed.  Provided further, it shall

be unlawful to fail to game check and permanently tag a deer

taken by eleven-thirty p.m. on the final day of the archery

season, early muzzleloading season, youth deer gun season,

deer gun season and statewide muzzleloading season."

{¶11} The core issue sub judice, in our view, involves the specificity

in which the State was required to describe the deer at issue, in order to

---

[3] We apply a former version of OAC 1501:31-15-11, with an effective date of July 1, 2012.

prove, beyond a reasonable doubt, a violation of the above-cited administrative code sections, that are premised upon R.C. 1531.02, which provides for state ownership of wild animals. As will be discussed more fully below, the State of Ohio has deemed it necessary to define, in detail, different types of deer species. The State contends that its use of the term "deer" as part of its case in chief was sufficient to prove the violations, and that it was not necessary for it to demonstrate that the deer at issue were not "captive white-tailed deer" or "domestic deer," which are excepted from the general regulations related to deer. Although Appellee has not filed a brief on appeal, his argument below was essentially that the State was required to prove that the deer were "white-tailed deer," which are wild animals owned by the State according to R.C. 1531.02, and that the State failed to differentiate between "white-tailed deer," which are subject to bag limits and tagging requirements, and "captive white-tailed deer" and "domestic deer," which are not. For the following reasons, we agree with Appellee.

{¶12} As indicated above, R.C. 1531.02 provides for state ownership of wild animals and provides as follows:

"The ownership of and the title to all wild animals in this state, not legally confined or held by private ownership legally acquired, is in the state, which hold such title for the benefit of

all the people.  Individual possession shall be obtained only in

accordance with the Revised Code or division rules."

R.C. 1531.01 contains pertinent chapter definitions and defines the term

"wild animals."  Specifically, R.C. 1531.01(X) provides that " '[w]ild

animals' includes * * * wild quadrupeds, and all other wild mammals, but

does not include domestic deer."  R.C. 1531.01(U) provides that " '[w]ild

quadrupeds' includes game quadrupeds and fur-bearing animals."  R.C.

1531.01(V) provides that " '[g]ame quadrupeds' includes * * * white-tailed

deer * * *."  Finally, R.C. 1531.01(YY) states that " '[d]eer' means white-

tailed deer (Oddocoileus virginianus)."  Thus, when read together, the

definitions section of R.C. Chapter 1531 provides that a "deer" is a "white-

tailed deer," which is considered a "game quadruped," which in turn is

considered a "wild quadruped," and is thus a "wild animal," which is owned

by the state.

{¶13}  R.C. 1531.01 also defines "domestic deer" in section (ZZ) as

"nonnative deer that have been legally acquired or their offspring and that

are held in private ownership for primarily agricultural purposes[,]" and

provides in section (X) that domestic deer are not wild animals.  R.C.

1531.01(GGG) further defines "captive white-tailed deer," as opposed to

"white-tailed" or "domestic" deer.  Thus, R.C. Chapter 1531 contemplates

three different types of deer species, all of which have specific definitions. Inserting the statutory definition of "deer" as set forth in R.C. 1531.01(YY) into OAC 1501:31-15-11(B)(1), that provision would read as follows:

"It shall be unlawful to take more than one antlered [white-tailed deer] per license year. For purposes of this rule an antlered [white-tailed deer] shall be any [white-tailed deer] with antlers three inches in height or greater. An antlerless [white-tailed deer] shall be any [white-tailed deer] with no antlers or antlers less than three inches in height."

{¶14} The State argues that it was not required to prove that the deer at issue were not "captive white-tailed deer" or "domestic deer" and we do not necessarily disagree with that argument. However, in our view, the State was required to prove that the deer at issue were "white-tailed deer," and thus, were wild animals owned by the State. In proving the positive fact that the deer were white-tailed deer, the State would also have, by implication, proven they were not captive white-tailed deer or domestic deer.

{¶15} Although the State cites this Court to several cases involving violations of deer regulations, we find these cases to be inapplicable to the facts and issues presently before us and as such, they provide no guidance. Further, our research has yielded no case law directly on point. The State

also argues that the burden was on Appellee to raise an affirmative defense alleging the deer at issue were either "captive" or "domestic." We disagree. Rather, we conclude that the burden was on the State to prove the essential elements of the offenses.

{¶16} The offenses at issue use the term "deer," which according to the Revised Code means "white-tailed deer." There was no evidence whatsoever that the deer at issue were "white-tailed deer." As there are multiple types of deer species defined, some of which are not subject to bag limits and tagging requirements, we conclude it was the State's burden to prove that the deer at issue were "white-tailed deer." The wildlife officer testified regarding the deer that were seized, describing the second deer in particular as a "world class deer," "Boone and Crocket status," "highest level that a deer could possibly rank," and a "once in a lifetime animal;" however, at no point in his testimony did Officer Gilkey positively identify the deer as a white-tailed deer, which is particularly defined to constitute a wild animal for purposes of state ownership.

{¶17} Additionally, a review of the transcript indicates that the State admitted four exhibits into the record at trial. Exhibit 1 was identified as a video, Exhibit 2 was identified as a tag for the 13-point buck, and Exhibits 3 and 4 were identified as hand receipts for the evidence that was seized from

Appellee.  However, none of those exhibits were transmitted with the trial transcript or record in accordance with App.R. 9(B)(6)(g).  Despite an order by this Court ordering the County Clerk and/or County Court to supplement the record on appeal with the trial exhibits, the exhibits have still not been provided to this Court.  Thus, to the extent those exhibits may have contained any evidence favorable to the State indentifying the deer at issue as "white-tailed deer," they are not part of the record on appeal.  As such, even construing the evidence in a light most favorable to the prosecution, we cannot conclude that the evidence reasonably could support a finding of guilt beyond a reasonable doubt with respect to the charge of taking more than one antlered deer per license year.

{¶18} In light of our disposition of Appellant's argument related to the charge of taking more than one antlered deer per license year, any issue related to the dismissal of the charge of failure to permanently tag has been rendered moot.  Thus, Appellant's sole assignment of error is overruled. Accordingly, the decision of the trial court is affirmed.

**JUDGMENT AFFIRMED**.

Harsha, J., concurring:

{¶19}  I agree with majority opinion that the state had the burden to establish that the deer was a "white-tailed deer" in accordance with the applicable definitional sections of R.C. 1531.01. *See* R.C. 1531.01(YY), (X), (U), and (V).

{¶20}  Moreover, I agree that the state failed to establish that the deer killed by Pierce was a white-tailed deer.  The state's brief asserts that Pierce "killed a large white-tailed deer buck illegally" and cites the written ODNR Law Enforcement Statement of Officer Gilkey, which was not admitted at trial, and pages 18 and 27 of the transcript to support this "fact."  But neither the statement nor the cited pages of the transcript of the bench trial includes any evidence that the deer killed by Pierce was a "white-tailed deer." Rather, the testimony variously describes the dead animal as the "10 point", "a 10 point also," the "previous buck," "another buck," "the ten-point buck," and the "deer."  Therefore, the majority opinion correctly concludes that the judgment of acquittal was correct.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, J.:   Concurs in Judgment and Opinion.
Harsha, J.:   Concurs with Concurring Opinion.

For the Court,

BY:   _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**